UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHENZHEN QINYI TECHNOLOGIES CO., LTD., <br><br> Plaintiff, <br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 1:25-cv-08416 <br><br> **Judge John J Tharp, Jr** <br><br> **Magistrate Judge M. David Weisman** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY**

Plaintiff Shenzhen Qinyi Technologies Co., Ltd. ("Plaintiff") hereby submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

**MEMORANDUM OF LAW**..................................................................................................... 1

**I.      INTRODUCTION** ............................................................................................................ 1

**II.     STATEMENT OF FACTS** .............................................................................................. 2

   A.   Plaintiff's Design Patent............................................................................................... 2

   B.   Defendants' Unlawful Activities .................................................................................. 2

**III.    ARGUMENT**..................................................................................................................... 3

   A.   Standard for Temporary Restraining Order and Preliminary Injunction ..................... 4

   B.   Plaintiff Is Likely to Succeed on the Merits................................................................. 5

   C.   There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief................................................................................... 7

**IV.     THE EQUITABLE RELIEF IS APPROPRIATE** ....................................................... 11

   A.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Patented Design. .......................................................................... 11

   B.   Preventing the Fraudulent Transfer of Assets Is Appropriate .................................... 12

   C.   Plaintiff Is Entitled to Expedited Discovery............................................................... 13

**VI.     CONCLUSION** .............................................................................................................. 14

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Plaintiff seeks *ex parte* injunctive relief in this underlying action based upon allegation of design patent infringement. Plaintiff's allegation includes those that Defendants are making, offering for sale, and selling infringing egg bunny plushies feathering Plaintiff's patented design without authorization or license (the "Infringing Products") through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in the Schedule A to the Amended Complaint (the "Seller Aliases" or "Defendants").

Defendants run a sophisticated intellectual property misappropriation operation and directly target the sales of their Infringing Products to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase the Infringing Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. For example, the Infringing Products share identical infringing design, and the listings for the Infringing Products share the same pictures that originated from Plaintiff. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. For example, different Amazon stores may be ultimately owned and controlled by the same individual or entity, though on the surface they do not share the same store name, business name or address. For the same reason, different e-commerce stores operating on different online platforms could be owned and operated by the same individual or entity.

Plaintiff is forced into this action to combat Defendants' infringement of its design patent and to prevent further harms caused to Plaintiff by Defendants' infringement. Accordingly, Defendants'

---

[1] The e-commerce store URLs are listed on the Schedule A to the Amended Complaint under the Online Marketplaces.

1

ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue a temporary restraining order, including a temporary injunction, a temporary asset restraint, and expedited discovery.

## II. STATEMENT OF FACTS

### A. Plaintiff's Design Patent

Plaintiff is the lawful assignee of all right, title, and interest to a United States Design Patent No. D1,034,847 (the "Patented Design"). *See* Declaration of Mulin Chen (the "Chen Declaration") at ¶ 3. The U.S. registration for the Patented Design is valid, subsisting, in full force and effect. *Id.* at ¶ 4. The registration for the Patented Design constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use and benefit from the Patented Design. *Id.*

Plaintiff has been advertising, promoting and selling its own egg bunny plushies featuring the Patented Design long before Defendants' infringing activities sabotaged Plaintiff's business. *Id.* at ¶ 5. Plaintiff's egg bunny plushies were broadly recognized and enjoyed among consumers. *Id.* Plaintiff's e-commerce store was ranked as top seller on online ecommerce platforms. *Id.* The patent-in-suit is an asset of Plaintiff and Plaintiff's business heavily relies on exclusive use of the design patent. *Id.*

### B. Defendants' Unlawful Activities

The success and popularity of genuine egg bunny plushies offered by Plaintiff has resulted in significant infringement of the Patented Design. *Id.* at ¶ 7. Defendants offer for sale and sell the Infringing Products to mislead the public that Defendants were authorized and licensed to use the Patented Design. *Id.* Recently, Plaintiff has been investigating suspicious e-commerce stores identified in proactive Internet sweeps. *Id.* at ¶ 8. Recently, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which are offering for sale and selling Infringing Products to consumers in this Judicial District and throughout the United States. *Id.*

2

None of the Defendants conducts business with Plaintiff. *Id.* at ¶ 9. None of the Defendants is an authorized or licensed user of the Patented Design. *Id.*

Defendants' unauthorized use of the Design Patents in connection with the advertising, distribution, offering for sale, and sale of Infringing Products into the United States, including Illinois, has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff by depriving it of the exclusive right to exploit the design patent to further its business.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and continues to cause irreparable harm to Plaintiff's reputation and business associated with the Patented Design. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop Defendants from benefiting from the unlawful and unauthorized use of the Patented Design and preserve the status quo until a hearing can be held.

Without a temporary restraining order in place, Defendants can and will likely register new e-commerce stores under new aliases because registering a new e-commerce store is easy and fast, Defendants also will likely move any assets to offshore bank accounts or hide their money in online payment accounts outside the jurisdiction of this Court. *See* Declaration of Faye Yifei Deng (the "Deng Declaration") at ¶¶ 5-9. Courts have recognized that civil actions against counterfeiters and intellectual property theft present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise is often useless if notice is given to infringers"). As such, Plaintiff respectfully requests that this Court issue the requested injunctive relief.

This Court has original subject matter jurisdiction over the claims in the action pursuant to 35 U.S.C. § 281, *et seq.*, 28 U.S.C §§1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants target their business activities towards consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offered shipping and agreeing to ship Infringing Products to the United States, including Illinois, accepted payment in U.S. dollars and, on information and belief, have unlawfully used the Patented Design to sell Infringing Products to residents of Illinois. *See* Amended Complaint at ¶¶ 4, 16. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-627 (7th Cir. 2022); *see, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois, no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### A.   Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.,* No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these conditions have been met, then it must consider the harm that the nonmoving party will suffer if a preliminary injunction is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. V. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Plaintiff Is Likely to Succeed on the Merits

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In this case, Plaintiff is the lawful assignee of all right, title and interest in and to the Patented Design. Chen Decl. at ¶ 3. Plaintiff has not licensed or authorized any Defendant to use the Patented Design, and none of the Defendants are authorized retailers of genuine products. *Id.* at ¶ 9.

Plaintiff has submitted extensive documentation along with this Memorandum proving that Defendants offer for sale, sell, and import into the United States for subsequent sale or use the same products, namely egg bunny plushies, that infringe the Patented Design. *Id.* at ¶¶ 8-10. To establish design patent infringement, a plaintiff must show that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is substantially the same as the claimed patent. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F. 3d 665, 672 (Fed. Cir. 2008). Under the two-stage analysis set forth in *Egyptian Goddess*, the Court first determines if the "claimed and accused designs are sufficiently distinct and plainly dissimilar." *See High Point Design LLC v. Buyer's Direct, Inc.*,

5

621 Fed. App. 632, 641 (Fed. Cir.2015); *Wallace v. Ideavillage Prods. Corp*, 640 Fed. App. 970, 972 (Fed. Cir. 2016). If the claimed and accused designs are not sufficiently distinct and plainly dissimilar, the Court proceeds to the second stage of the *Egyptian Goddess* standard and assesses the "differences between the claimed and accused designs viewed in light of the prior art" to determine whether the accused product is substantially the same as the patented design in the eyes of an ordinary observer. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

For the first stage of the *Egyptian Goddess* test, **Exhibit 1**[2] attached hereto shows a side-by-side comparison of the Infringing Product sold by each Defendant and figures of the Patented Design. Viewing Exhibit 1, the Court can determine that each Infringing Product and the Patented Design are not sufficiently distinct and plainly dissimilar. In fact, the Infringing Products are substantially similar to the Patented Design. Thus, the Court may proceed to the second stage of the *Egyptian Goddess* test.

Although it is Defendants' burden to produce comparison prior art for the second stage of the *Egyptian Goddess* test, Plaintiff has submitted **Exhibit 2** showing the Patented Design and comparison prior art, including all references cited by the patent examiner during prosecution of the Patented Design. *Egyptian Goddess*, 543 F. 3d at 681 (Fed. Cir. 2008) ("Under the ordinary observer test it makes sense to impose the burden of production as to any comparison prior art on the accused infringer"). As shown in Exhibit 2, the ornamental features of the comparison prior arts vary significantly from the Patented Design. For example, none of the prior art references show a round eye bunny with heart-shaped nose and extraordinarily long and soft ears that they can wrap all the way around the bunny and form an egg-shaped shell, nor do they have a zipper stitched along the middle of the egg, and when zipped up, the egg holds the bunny tightly. Exhibit 2. Moreover, the design claimed in the Patent – a big eye bunny with heart-shaped nose and extraordinarily long fluffy ears

---

[2] **Exhibit 1** includes excerpts from Exhibit 2 to the Declaration of Mulin Chen.

and can be wrapped in by its ears and form an egg – distinct significantly from the prior art and, any product including these features is more likely to infringe the Patented Design. *See Colum. Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 80 F.4th 1363, 1377 (Fed. Cir. 2023) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677 (Fed. Cir. 2008)

As shown in Exhibit 1, each Defendant sells an Infringing Product which has an overall appearance that is substantially similar, if not the same, to the overall appearance of the Patented Design as described above. The Infringing Products all include features, such as a round eye bunny with heart-shaped nose and extraordinarily long and soft ears, the ears are so big that they can wrap all the way around the body of the bunny and form an egg-shaped shell, a zipper stitched along the middle of the egg, and when zipped up, the egg holds the bunny inside. Given the "conspicuous" departure from the comparison prior art, each Infringing Product is "more likely" to infringe the Patented Design. "The concentration on small differences in isolation [in design patent infringement analysis must not] distract from the overall impression of the claimed ornamental features." *Crocs, Inc.,* 598 F.3d 1294, 1303-04 (Fed. Cir. 2010). Therefore, the Infringing Products are "substantially the same" in the eye of an ordinary observer. *Egyptian Goddess*, 543 F. 3d at 678 (Fed. Cir. 2008). Accordingly, Plaintiff is likely to establish a *prima facie* case of design patent infringement.

### C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

Irreparable harm resulting from design patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiff is likely to suffer three primary forms of irreparable harm: (1) loss of goodwill;

(2) loss the right to exclude others from using and benefiting from the Patented Design; and (3) loss of future sales and business opportunities. Chen Decl. at ¶¶ 15-19. Each of these harms, independently, constitutes irreparable harm and offers a basis on which am injunctive relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and cites omitted).

Defendants' infringing activities erode and devalue Plaintiff's rights in and control over the Patented Design, thereby causing damages to Plaintiff's business and interfering with Plaintiff's ability to exploit its intellectual property rights. Chen Decl. at ¶¶ 15-19. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

Defendants' sale of the Infringing Products is likely to cause consumer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill as well as business opportunities. Chen Decl. at ¶¶ 15-19. Plaintiff's lack of control over the quality and appearance of the Infringing Products is likely to cause consumers to believe that the inferior Infringing Products come out from Plaintiff and discourage consumers to purchase genuine products.

8

*Id.* Because of price erosion, Plaintiff had to lower the selling price of genuine products or deal with plunging sales, and as a result, Plaintiff incurred substantial loss. *Id.* As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on Reebok in finding irreparable harm).

A causal nexus exists between Defendants' infringing activities and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the Patented Design in the Infringing Product is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), aff'd, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'").

9

Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike, Inc.* 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

For the reasons stated above, Plaintiff has suffered and will continue to suffer further irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Chen Decl. at ¶ 19.

D. **The Balance of Harm Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must consider the harm Defendants will suffer if the requested preliminary relief herein is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F. 3d at 895. According to the Federal Circuit Court of Appeals, it is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product. *LEGO v. ZURU Inc.*, 799 F. App'x 823 (Fed. Cir. 2020). As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted. Defendants took a calculated risk when they

10

engaged in infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F. 3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their current unlawful conduct.

## IV. THE EQUITABLE RELIEF IS APPROPRIATE

The Patent Act authorizes court to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Patented Design.

Plaintiff requests a temporary injunction requiring Defendants to immediately cease making, using, offering for sale, selling, and importing any Infringing Products. Such relief is necessary to stop the ongoing harm to Plaintiff's control over its exclusive rights in the Patented Design as well as Plaintiff's good will, and to prevent Defendants from continuing to benefit from the sale of Infringing Products. The need for *ex parte* relief is magnified in today's global economy where infringers and those who misappropriate intellectual property can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of Defendants, as well as other e-commerce stores Defendants use to distribute, sell and offer to sell the Infringing Products. Many

11

courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See*, e.g., *Nike, Inc.* 166 F.Supp 3d 1177, 1178-79 (D. Nev. 2016). This Court has granted TRO in similar cases involving design patent infringement. *See, e.g., Bounce Curl, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 1:25-cv-05892, Docket No. 29 (N.D. Ill. Jun. 10, 2025) (unpublished).

        **B.**        **Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets (e.g., Freeze of Assets) so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such restraint is not granted in this case, Defendants can and will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, on information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of success on the merits of its design patent infringement claim. Plaintiff is entitled to recover Defendants' total profit. 35 U.S.C. § 289. Plaintiff's Amended Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for prejudgment asset freeze to preserve the relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL

3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm resulted from Defendants' unlawful conduct, and that unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts beyond this Court's reach. Accordingly, an asset restraint is proper.

### C. Plaintiff Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain their merits." *Oppenheimer Fund, Inc. Sanders*, 437 U.S. 340, 351, 98 S. Ct 2380 (1978). Courts have a wide latitude in determining whether to grant a party's request for discovery. *Id.* (citations omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover names and financial accounts Defendants use for their infringing sales operation as well as email addresses of Defendants. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained and that an equitable accounting is possible. Plaintiff's requested relief for equitable accounting may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

13

The posting of security upon issuance of a TRO or Preliminary Injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of design patent infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than thirty-eight thousand Dollars ($38,000) ($1,000 bond per defendant).

## VI. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that the Court grant this Motion and enter an order temporarily restraining Defendants and granting the additional relief requested in the form of a temporary asset restraint, expedited discovery, and any other additional relief as this Court deems equitable and appropriate.

Dated: July 29, 2025                                        Respectfully submitted,

                                                            */s/ Faye Yifei Deng*
                                                            Faye Yifei Deng
                                                            YK Law LLP
                                                            445 S Figueroa Street, Suite 2280
                                                            Los Angeles, California 90071
                                                            Telephone: (213) 401-0970
                                                            Email: fdeng@yklaw.us

                                                            *Attorney for Plaintiff Shenzhen Qinyi Technologies Co., Ltd.*